

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Ruth Guerriero
2826 S. Hutchinson St.
Philadelphia, PA 19148,

          Plaintiff

       v.

Julián Castro, Secretary of Housing and Urban
Development
451 7th Street SW
Washington, DC 20410,

OneWest Bank, F.S.B.
7700 West Parmer Lane
Austin, TX 78729,

          Defendants

**15    1643**

Civil Action No.

## COMPLAINT

Plaintiff Ruth Guerriero ("Ms. Guerriero") brings this action against Julián Castro,

Secretary of the U. S. Department of Housing and Urban Development ("HUD") and OneWest

Bank, F.S.B. ("OneWest") and states as follows:

### I. PRELIMINARY STATEMENT

1.     Ms. Guerriero files suit under the Administrative Procedure Act ("APA"), 5

U.S.C. § 551 *et seq.,* for judicial review of final agency actions by HUD regarding federally-

insured reverse mortgages under the Home Equity Conversion Mortgage ("HECM") program.

Ms. Guerriero challenges HUD's promulgation of HECM regulations that violate statutorily-

mandated protection for spouses of reverse mortgage borrowers, and its continued enforcement of those regulations in violation of the HECM statute. Ms. Guerriero joins OneWest as a necessary party to the APA claims pursuant to Fed. R. Civ. P. 19. Ms. Guerriero also brings claims for reformation of the mortgage contract and breach of the HECM insurance contract against OneWest and HUD.

2.      Ms. Guerriero challenges HUD's failure to protect her, a surviving spouse of a reverse mortgage borrower, from foreclosure and displacement, as required by the reverse mortgage statute, 12 U.S.C. § 1715z-20(j), titled "Safeguard to Prevent Displacement of Homeowner." As a result of HUD's failure, Ms. Guerriero is facing foreclosure and eviction from her home where she expected to be able to live for the rest of her life.

3.      Ms. Guerriero seeks a declaration that HUD's regulations violated the HECM statute. Ms. Guerriero further seeks a declaration that because the regulation was invalid, the foreclosure provisions of the regulations have not been triggered, OneWest is not required to foreclose, and HUD is required to find a means to ensure payment of insurance benefits to OneWest that is not contingent upon foreclosure and displacement of Ms. Guerriero from her home.

4.      Ms. Guerriero further seeks reformation of the mortgage to include the provision protecting her from displacement, as required by the tripartite HECM insurance agreement with which the parties intended to comply.

5.      Ms. Guerriero also brings claims against OneWest and HUD for breach of the HECM insurance contract, which required that the loan not be called due and payable until her death.

2

## II. PARTIES

6.      Plaintiff Ruth Guerriero is a 69-year-old widow. She has resided at 2826 S. Hutchinson Street, Philadelphia, Pennsylvania continuously since 2006, when she purchased the property together with her husband Alfred Guerriero. Ms. Guerriero is currently facing foreclosure of her home as a result of HUD's failure to protect surviving spouses as required by statute, and the Defendants' failure to comply with the terms of the HECM insurance contract. Her home is scheduled to be sold at Sheriff Sale on May 5, 2015, following a mortgage foreclosure default judgment entered against Ms. Guerriero.

7.      Defendant Julián Castro is the Secretary of the Department of Housing and Urban Development, a cabinet-level federal agency. HUD's headquarters is at 451 7th Street S.W., Washington, D.C., 20410.

8.      Defendant OneWest Bank, F.S.B., is a corporation or unincorporated business entity doing business in the Commonwealth of Pennsylvania and elsewhere. It maintains a principal place of business at 7700 West Parmer Lane, Austin, TX  78729. Its business consists in whole or in part in the arranging, making, and servicing of reverse mortgage loans. OneWest is the holder of the HECM mortgage loan securing Ms. Guerriero's home. OneWest is a necessary party to the APA claims pursuant to Fed. R. Civ. P. 19.

## III. JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, under 5 U.S.C. § 702 for the APA claims, under 28 U.S.C. § 1346(a)(2) for the breach of contract claim against HUD.

3

10.     This Court has supplemental jurisdiction under 28 U.S. Code § 1367 for the claims against OneWest.

11.     In the alternative,  this Court has jurisdiction under 28 U.S.C. § 1332 for the claims against OneWest in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the matter is between citizens of different states.

12.     Where a plaintiff seeks declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object in litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 346 (1977); *see also, In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3rd Cir. 1994) ("In injunctive actions, it is well settled the amount in controversy is measured by the value of the right sought to be protected by the equitable relief.")

13.     According to papers served on Plaintiff by OneWest, the value of the real property on October 30, 2012, was $140,000.  According to the City of Philadelphia, the value of the real property is currently assessed at $143,000.

14.     Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

15.     Venue in this District is proper under 28 U.S.C. § 1391(e) in that the defendants transact business here and the conduct complained of occurred here.

## IV.  FACTUAL BACKGROUND

### A. The HECM Program

16.     HUD's duty to protect Ms. Guerriero is rooted in a federal program to insure reverse mortgages called the Home Equity Conversion Mortgage ("HECM") program. The HECM program was originally authorized by the Housing and Community Development Act of

4

1987, Pub. L. No. 100-242, 101 Stat. 1815 (1988); 12 U.S.C. § 1715z-20.  Under the program, the United States Government insures reverse mortgages originated by private lenders.

17.      A reverse mortgage is a loan that allows older homeowners to convert part of the equity in their homes into cash.  It is the "reverse" of a traditional mortgage, in which the borrower repays the borrowed sum on a monthly basis.  Reverse mortgage borrowers receive money in exchange for their home equity. Borrowers can choose to receive the loan proceeds in a lump sum, on a monthly basis, or they can draw on a line of credit periodically as needed.  Reverse mortgage borrowers are not required to make monthly or other periodic payments to repay the loan.  Instead, the loan balance increases over time, and the loan does not become due and payable until one of a number of defined events occurs.  12 U.S.C. § 1715z-20(j).

18.      HUD administers the HECM program, and issued its governing regulations.  Interpretations of the HECM regulations are provided in HUD's Handbook, 4235.1 REV-1 (1994), Home Equity Conversion Mortgages, in a series of "mortgagee letters" directed to private lenders participating in the program, and in its online "HECM Servicing Frequently Asked Questions."

19.      Recognizing the complex nature of the reverse mortgage product, the HECM statute has always required specific disclosures about the rights, limited liability, costs and other terms of the mortgage, and has required that homeowners receive counseling before taking out a loan that HUD would insure under the program.  12 U.S.C. § 1715z-20(e) & (f).  Throughout the history of the HECM program, HUD has not provided this counseling directly, but has approved private organizations to provide it.  While HUD has recommended that non-borrowing spouses

5

also receive counseling, it did not require such counseling until 2011, four years *after* Mr. Guerriero obtained the HECM that is at issue in this case.

20.     HUD does not originate HECMs. They are originated by private lenders, who generally sell them into the secondary market.

21.     In addition to the HECM statute and regulations, all HECM transactions are governed by a first Note and Mortgage between the lender and borrower; a second Note and Mortgage entered into between HUD and the borrower; a Home Equity Conversion Loan Agreement entered into by the lender, the borrower, and HUD; and the insurance contract between HUD and the lender.

22.     HUD's regulations at 24 C.F.R. § 206.1 through 206.211 are the insurance contract between HUD and lenders. No written binder or separate document sets forth the terms of the HECM insurance. Instead, the "contract of insurance" is defined as "the agreement evidenced by the issuance of a Mortgage Insurance Certificate or by the endorsement of the Commissioner upon the credit instrument given in connection with an insured mortgage, *incorporating by reference* the regulations in this subpart and the applicable provisions of the Act." 24 C.F.R. § 203.251 (j). Borrowers and their heirs are third-party beneficiaries of the FHA insurance contract.

23.     The HECM statute states that the loan becomes "due and payable" upon the death of the homeowner(s), sale of the property, or other events to be determined by HUD. 12 U.S.C. § 1715z-20(j). HUD's regulations add to this list of "due and payable" events the mortgagor's change of principal residence; the failure to perform an obligation of the mortgage, and the

6

mortgagor's failure to occupy the property for more than 12 consecutive months because of physical or mental illness. 24 C.F.R. § 206.28(c)(2).

24.     Any lender intending to participate in the HECM program for a particular loan must extend the loan in compliance with the HECM statute and HUD's regulations. If approved, HUD issues an insurance certificate for the loan. Mortgage insurance premiums are paid by the borrower from the equity in the home. An initial mortgage insurance premium is paid from the funds at closing, and ongoing monthly premiums are added to the balance of the loan securing the homeowner's residence at the rate of 0.5% per annum of the loan balance, compounded monthly.

25.     HECM insurance provides a number of benefits to the homeowners whose home equity funds the premiums. It provides protections for homeowners if the lender defaults on its obligations under the mortgage, *see* 24 C.F.R. §§ 206.117, 206.121, and ensures that neither borrowers nor their heirs will ever have to pay more than the value of the property to satisfy the loan. 24 C.F.R. §§ 206.123(b); 206.125(c).

26.     HUD's issuance of an insurance certificate for a particular loan "shall be conclusive evidence of the eligibility of the loan or mortgage for insurance." 12 U.S. Code § 1709 (e).

## B. Claims on the Insurance Fund

27.     HUD regulations permit lenders to file an FHA insurance claim if the mortgage is assigned to HUD, the lender forecloses on the property, or the borrower sells the property for less than the mortgage balance. 24 C.F.R. § 206.123. *See also* 24 C.F.R. §§ 206.127, .129.

7

28.     Since the beginning of the program, HUD has accepted assignment of over 30,000 mortgages. These mortgages are serviced by a HUD contractor.

29.     The statute permits mortgagees to initiate a foreclosure if the loan becomes "due and payable" because of the death of the homeowner(s) including a non-borrowing spouse, sale of the property, or other events to be determined by HUD. 12 U.S.C. § 1715z-20(j). HUD's regulations add to this list of "due and payable" events the mortgagor's change of principal residence; the failure to perform an obligation of the mortgage, and the mortgagor's failure to occupy the property for more than 12 consecutive months because of physical or mental illness. 24 C.F.R. § 206.27(c)(2).

30.     If and when a 24 C.F.R. § 206.27(c) due and payable event occurs, HUD regulations require lenders to proceed with foreclosure and sale of the property according to timelines and procedures set out in 24 C.F.R. §§ 206.125-129 in order to perfect their insurance claim.

### C.  **HUD Has Failed to Protect Spouses from Displacement**

31.     The reverse mortgage statute includes a section titled "Safeguard to prevent displacement of homeowner." This provision states that HUD "may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary." 12 U.S.C. § 1715z-20(j). The provision further states that "[f]or purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner," so the death of a spouse – even one who is not named on the HECM – does not trigger the obligation to pay off the mortgage. *Id.*

8

32.     The legislative history on the passage of the HECM legislation confirms the plain meaning of this statutory provision. The Senate Report on the legislation states that HECM mortgages shall "defer[ ] any repayment obligation until death of the homeowner *and* the homeowner's spouse . . ." (emphasis added).[1]

33.     Prior to August 4, 2014, *see* ¶ 37, *infra*, HUD never implemented the plain meaning of the anti-displacement statutory mandate. HUD's regulations substitute the term "mortgagor" for "homeowner" and "spouse," and state that the duty to satisfy the mortgage occurs when the *"mortgagor* dies and the property is not the principal residence of at least one surviving *mortgagor*. . . " 24 C.F.R. § 206.27(c) (emphasis added). HUD defines mortgagor as "each original borrower under a mortgage. The term does not include successors or assigns of a borrower." 24 C.F.R. § 206.3.

34.     HUD's mortgage documents further contravene the statutory protection. The standard Mortgage, also written by HUD, which requires its use in all HECM transactions, terminates the mortgage upon the death of the borrower, regardless of whether a non-borrowing spouse survives the borrower.

35.     The HUD regulations' substitution of the term "mortgagor" for "homeowner," and their adoption of a definition of "mortgagor" that is contrary to and more limited than the HECM's statutory definition of "mortgagor," makes the HECM "due and payable" upon the death of a borrowing spouse. Thus, the regulations ignore a key statutory protection for the surviving spouse who is not named on the HECM, as provided by 12 U.S.C. § 1715z-20(j).

---

[1] Report 100-21 by the Senate Committee on Banking, Housing and Urban Affairs accompanying S. 825, 100th Congress, Section 135 (reporting on Subsection 254(j)). Exhibit 2.

36.     The U.S. District Court for the District of Columbia has already ruled that HUD's regulation at 24 C.F.R. § 206.27(c)(1) (requiring the loan to come due upon the death of the "mortgagor") violates the plain language of the HECM statute and is invalid. *Bennett v. Donovan*, No. 11-CV-498-ESH, 2013 U.S. Dist. LEXIS 140440, *17 (D.D.C. Sept. 30, 2013) held: "Subsection (j) means what it says: the loan obligation is deferred until the homeowner's *and* the spouse's death. Therefore, the judicial inquiry stops there."

37.     In response to this ruling, HUD issued amended guidance, effective August 4, 2014, for new reverse mortgage loans to comply with the statute and protect future non-borrowing spouses from foreclosure and displacement.

38.     As a result of the *Bennett* ruling that Section § 206.27(c)(1) is invalid, HUD has recognized the "automatic" result that the death of the borrower spouse is not a trigger for the foreclosure provisions in 24 C.F.R. § 206.125.  HUD has also notified the mortgagees of the named plaintiffs in *Bennett* and a subsequent putative class action, *Plunkett v. Castro*, No. 14-CV-326-ESH, 2014 U.S. Dist. LEXIS 119805 (2014), that no foreclosure is required as a result of the borrower's death, since HUD's regulation has been ruled invalid.

39.     The *Plunkett* court held that it was arbitrary and capricious for HUD to differentiate the six plaintiffs in that case from other surviving spouses in the application of this "automatic" relief, and remanded to HUD. *Plunkett v. Castro*, 2014 U.S. Dist. LEXIS 119805, *48-49 (D.D.C. Aug. 28, 2014). The court clarified that its reasoning in *Bennett* was not limited to the plaintiffs in that case, that Section 206.27(c) was invalid as applied to the plaintiffs due to their status as surviving spouses, and that the *Bennett* decision has "precedential value in identical cases concerning other surviving spouses." *Id.*

10

40.     Another individual non-borrowing surviving spouse filed a similar lawsuit against HUD in *Harris v. Castro*, No. 14-cv-03110-TCB (N.D. Ga.). Upon information and belief, HUD has notified the mortgagee of the plaintiff in *Harris* that no foreclosure is required as a result of the borrower's death. As a result of the decision in that case, HUD extended relief to the Plaintiff comparable to the relief it agreed to give to the *Bennett* and *Plunkett* plaintiffs.

41.     On January 29, 2015, HUD issued Mortgagee Letter 2015-03 ("ML 2015-03"), laying out the relief it would make available to non-borrower spouses on loans originated prior to August 4, 2014 to other than the plaintiffs in the *Bennett*, *Plunkett*, and *Harris* cases.[2]

42.     In ML 2015-03, HUD offered mortgagees a "Mortgagee Optional Election," ("MOE") under which mortgagees could elect not to foreclose on a surviving spouse only under very limited circumstances. Under the MOE, younger, non-borrowing spouses, such as Ms. Guerriero, will rarely if ever qualify for relief.  HUD declined to extend broader relief to surviving spouses—the so-called "Hold Election"—because it would "impose[] a financial risk to the insurance funds that is simply too great."

43.     Under the Hold Election, a mortgagee would not be required to foreclose in order to continue receiving the full benefits of the HECM insurance. The mortgagee could hold the loan, earn interest, and then assign the loan to HUD when the balance reaches 98% of the maximum claim amount.

44.     The Hold Election, if offered for Ms. Guerriero's loan, would allow her to save her home from foreclosure.

---

[2] Mortgage Letter 2015-03 is available at
http://portal.hud.gov/hudportal/documents/huddoc?id=15-03ml.pdf

11

45.     There is no material difference between the surviving spouses whom HUD has agreed to protect and those whom it has not agreed to protect, except that the spouses HUD has agreed to protect had all, on information and belief, filed suit against HUD to demand protection.

46.     HUD has failed to notify the mortgagee for Ms. Guerriero's loan that she qualifies for the Hold Election. Furthermore, by issuing ML 2015-03, HUD has indicated that it has no intention of so notifying the mortgagee for Ms. Guerriero's loan.

47.     HUD has acted arbitrarily and capriciously and in violation of Ms. Guerriero's rights by treating her differently than the plaintiffs in the *Bennett*, *Plunkett*, and *Harris* cases.

48.     HUD's failure to comply with the law has had tragic consequences for spouses of reverse mortgage borrowers, like Ms. Guerriero, who unexpectedly face a demand to satisfy the mortgage in full soon after losing their spouses. Those homeowners who cannot pay the often-immense demand face the threat of foreclosure and eviction – piling the tragedy of displacement or homelessness on top of the loss of a husband or wife. The number of reverse mortgage foreclosures will only increase in the coming years, given that the program expanded dramatically in the last decade due to increased marketing efforts to this country's aging population.

### D. The HECM Statute Requires HUD to Act to Protect Spouses from Displacement

49.     HUD's regulations and its creation and imposition of the "Standard Mortgage" violated a core purpose of the HECM program: protecting surviving spouses from displacement.

50.     HUD also violated another section of the reverse mortgage statute by failing to exercise its powers to preserve the homeownership of surviving spouses whose partners received reverse mortgages. When a reverse mortgage loan comes due and payable due to the death of a

HECM borrower, the HECM borrower's spouse is entitled to protection from displacement even if he or she is not a named borrower on the mortgage. HUD has both the statutory power and the obligation to protect these spouses from displacement.

51.     Subsection (i) of the reverse mortgage statute states that in order to further the purposes of the reverse mortgage program, HUD must take any action necessary to provide reverse mortgage borrowers and lenders with any funds they are entitled to under the reverse mortgage contracts. 12 U.S.C. § 1715z-20(i)(1). Such actions may include, but are not limited to, paying funds from the FHA insurance fund and accepting assignment of the mortgage. 12 U.S.C. § 1715z-20(i)(2).  HUD has failed to take such actions in this matter.

52.     HUD has (and had) the power to prevent foreclosures of the homes of widows and widowers. HUD controls every aspect of the HECM reverse mortgage program. Congress gave HUD broad statutory powers to protect homeowners and lenders and to ensure the goals of the program are met. 12 U.S.C. § 1715z-20(i). HUD has abdicated its responsibility to protect the homes of surviving spouses, and worked crosswise against the statute it was entrusted with implementing, through its failure to implement the mandate of Subsection (j) in its regulations and in the reverse mortgage contracts over which it has near total control.

13

## V.  BACKGROUND TO THE REVERSE MORTGAGE ORIGINATION

53.     Ruth Guerriero is 69 years old. She and her husband, Alfred Guerriero, purchased

their home at 2826 South Hutchinson Street, Philadelphia, Pennsylvania, in 2006. Mr. Guerriero

lived there continuously until his death on May 19, 2012, and Ms. Guerriero has lived there

continuously since they purchased the home.  Ms. Guerriero was a spouse for purposes of the

HECM statute.

54.     Mr. and Ms. Guerriero were married in 1969 when Ms. Guerrero was 24 years old

and Mr. Guerriero was 46 years old.  Mr. Guerriero owned Big Al's Pizza Parlor at 11th and

Oregon until he retired in 1988.  Ms. Guerriero owned a beauty salon and sold real estate on the

side until she retired in 2007.

55.     In 2006, Mr. and Ms. Guerriero sold their house on Packer Avenue and

downsized to the property at 2826 South Hutchinson that is the subject of this Complaint.  They

purchased the house for cash with the proceeds of the sale of their previous house and did not

have a new mortgage.

56.     According to public records, on September 19, 2007, Mr. Guerriero took out an

FHA-insured reverse mortgage loan with Cardinal Financial Company, L.P. As part of the

reverse mortgage transaction, Ms. Guerriero gave up her interest in the property to Mr. Guerriero

alone.  The mortgage secured future advances up to a maximum principal amount of $200,000.

57.     Mr. Guerriero handled all of the couple's finances.  Ms. Guerriero did not know

that Mr. Guerriero was taking out a mortgage loan.  She never underwent any financial

14

counseling related to the reverse mortgage. Mr. Guerriero told Ms. Guerriero that she should take her name off of the deed in order to save money on their property taxes.

58.     Ms. Guerriero never saw any of the money from the reverse mortgage transaction. She does not know what Mr. Guerriero did with the money, but suspects that it may have been needed to pay off certain gambling debts that Mr. Guerriero may have had.

## VI.  THE REVERSE MORTGAGE TRANSACTION

59.     In order to effectuate the transaction, Mr. Guerriero executed two mortgage agreements: one to HUD and another to Cardinal Financial Company, L.P. ("Cardinal").

60.     The two mortgages secured future advances up to the maximum principal amount of $600,000.00.

61.     As part of the loan transaction, Mr. Guerriero, Cardinal, and HUD entered into a contract for HECM insurance.

62.     On information and belief, Mr. Guerriero paid the HECM insurance premiums through an initial payment from the loan proceeds at closing and monthly premiums that were added to the loan balance secured by the home.

63.     On information and belief, the terms of the HECM insurance contract explicitly incorporate the HECM statute and regulations, including the requirement that Ms. Guerriero, as "the spouse of a homeowner", be protected from displacement. 12 U.S.C. § 1715z-20(j). The contract requires that the HECM loan not become due and payable as long as Ms. Guerriero continues to reside in the home (and maintain the property taxes and homeowner's insurance).

15

64.    As a party to the insurance contract, Ms. Guerriero was protected by its provisions.  On information and belief, the insurance contract, through its incorporation of the HECM statute and regulations, protected her in the event that her lender defaulted on its obligations, and shielded her against a deficiency action in the event the outstanding loan balance exceeds the value of the property.

65.    Ms. Guerriero is a third-party beneficiary of the HECM insurance that her husband purchased as part of the loan transaction.  On information and belief, the insurance contract, through its incorporation of the HECM statute, protects her from displacement and shields her against a deficiency action in the event the outstanding loan balance exceeds the value of the property.

66.    HUD determined that the transaction was eligible for HECM insurance and issued an insurance certificate for the loan.

67.    Pursuant to 12 U.S.C. § 1709(e), HUD's determination that the transaction was eligible for HECM insurance was conclusive evidence that the transaction met the eligibility criteria for the loan, including protection against displacement for Ms. Guerriero.

68.    The terms of the HECM insurance are an integral part of the three-party HECM loan agreement.

69.    Upon information and belief, Cardinal only entered into the HECM loan agreement because the HECM insurance would make the loan easily transferable.

## VII. EVENTS FOLLOWING THE REVERSE MORTGAGE TRANSACTION

70.     On September 19, 2007, the same day as the Mortgage was executed by Mr.
Guerriero, a document was recorded with the Office of the Recorder of Philadelphia County as
Instrument Number 51788379 assigning the mortgage from Cardinal to Financial Freedom
Senior Funding Corp. a Subsidiary of Indy Mac Bank, ISAOA.

71.     On September 29, 2009, a document was recorded with the Office of the Recorder
of Philadelphia County as Instrument Number 52150097 assigning the mortgage from Financial
Freedom Senior Corporation to Mortgage Electronic Registration Systems, Inc., a Delaware
Corporation, its successors or assigns, as nominee for Financial Freedom Acquisition LLC.

72.     On September 11, 2013, a document was recorded with the Office of the Recorder
of Philadelphia County as Instrument Number 52694891 assigning the mortgage from Mortgage
Electronic Registration Systems, Inc., a Delaware Corporation, its successors or assigns, as
nominee for Financial Freedom Acquisition LLC, to OneWest Bank, FSB.

73.     On May 19, 2012, Mr. Guerriero died.

74.     On June 3, 2012, Letters Testamentary to the Estate of Mr. Guerriero were
granted to Ms. Guerriero by the Register of Wills in and for the County of Philadelphia.

75.     On October 1, 2013, OneWest Bank, FSB, filed a Complaint in Mortgage
Foreclosure against Ms. Guerriero, Executitrix of the Estate of Alfred Guerriero, after declaring
the loan due and payable as a result of Mr. Guerriero's death.

76.     On May 2, 2014, a default judgment in the Complaint in Mortgage Foreclosure
was entered against Ms. Guerriero in favor of OneWest Bank, FSB.

17

77.     On January 30, 2015, in response to a Petition to Postpone Sheriff's Sale of Real

Property, Judge Carpenter of the Philadelphia Court of Common Pleas postponed the scheduled

sheriff's sale of the property to May 5, 2015 "for counsel to investigate Petitioners legal

remedies under HUD and federal legislation regarding reverse mortgages and any potential

injunctive or equitable relief in this case."

78.     Upon Mr. Guerriero's death, sole ownership of the property passed to Ms.

Guerriero by operation of law.  Notwithstanding this, on February 9, 2015, a deed transferring

the property into the name of Ms. Guerriero was recorded with the Office with the Department of

Records of the City of Philadelphia under Document No. 52879952.

79.     Ms. Guerriero continues to reside in the home.

## VIII.  FIRST CLAIM FOR RELIEF

### DECLARATORY RELIEF – AGAINST HUD

**HUD's Contravention of the Anti-Displacement Provision of the HECM Statute Is
Arbitrary & Capricious or Otherwise Not in Accordance with Law & Exceeded HUD's
Statutory Authority in Violation of § 706(2) of the APA**

80.     All previous averments are incorporated herein by reference.

81.     Federal agency action is unlawful if it is arbitrary, capricious or otherwise not in

accordance with law, or if it exceeds the agency's statutory authority. 5 U.S.C. § 706(2).

82.     The anti-displacement provision of the HECM statute provides the spouse of a

HECM homeowner the same protection from displacement as the homeowner named on the

mortgage. *See* 12 U.S.C. § 1715z-20(j).

18

83. The HECM statute's anti-displacement provision states that reverse mortgages must "provide[] that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, sale of the property" or other occurrence to be identified by HUD.

84. "Homeowner" is specially defined for purposes of 12 U.S.C. §1715z-20(j) to include a homeowner's spouse. A spouse like Ms. Guerriero who is not named on the HECM mortgage is a "homeowner" entitled to this protection.

85. HUD failed to give effect to the plain meaning of the anti-displacement statutory mandate, and has instead enacted regulations that violate it. Specifically, 24 C.F.R. § 206.27(c)(1) states that the mortgage is due and payable in full if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor." The regulations define a "mortgagor" to exclude the homeowner's spouse.

86. HUD's regulations are arbitrary and capricious or contrary to law, and exceed (indeed, flatly contradict) HUD's statutory authority.

87. Ms. Guerriero is a "homeowner" entitled to protection from displacement by the HECM statute. *Bennett v. Donovan,* Case No. 11-498 (ESH), 2013 U.S. Dist. LEXIS 140440 (D.D.C. Sept. 30, 2013).

88. Had HUD properly implemented the anti-displacement provision of the HECM statute, the reverse mortgage undertaken by Mr. Guerriero would not be due and payable and Ms. Guerriero's home would not now be threatened to be sold at sheriff's sale.

89. Ms. Guerriero has been injured and continues to be injured by HUD's failure to accord her the protections provided by 12 U.S.C. § 1715z-20(j).

19

90.     HUD is mandated by the HECM statute to take all actions necessary to ensure the

purposes of the program. 12 U.S.C. § 1715z-20(i)(1). The protection from displacement is one of

those purposes. HUD must take action to ensure this core protection for Ms. Guerriero.

91.     Ms. Guerriero is entitled to a declaratory judgment that 24 C.F.R. § 206.27(c)(1)

is invalid as applied to Ms. Guerriero.

## IX.  SECOND CLAIM FOR RELIEF

## DECLARATORY RELIEF – AGAINST HUD AND ONEWEST

**HUD's Failure to Provide Accurate Information to OneWest Regarding the Applicability
of the Foreclosure Regulations Is Arbitrary & Capricious or Otherwise Not in Accordance
with Law & Exceeded HUD's Statutory Authority in Violation of § 706(2) of the APA.**

92.     All previous averments are incorporated herein by reference.

93.     HUD's HECM foreclosure regulations are provided in 24 C.F.R. § 206.125. This

Section sets forth specific procedures and timelines for foreclosure "whenever the mortgage is

due and payable under the conditions stated in § 206.27(c)(1)."

94.     As set forth above, HUD regulation 24 C.F.R. § 206.27(c)(1), stating that the

mortgage is due and payable in full when the mortgagor dies, violates the HECM statute and is

invalid as applied to Ms. Guerriero.

95.     Because Section 206.27(c)(1) is invalid, the loan is not due and payable under that

section as a result of Mr. Guerriero's death. Accordingly, there is no due and payable event to

trigger the foreclosure provisions of 24 C.F.R. § 206.125.

96.     In its briefs in *Plunkett*, HUD recognized that "Section 206.125 is triggered only

by a due and payable event described in 206.27(c), and, in the absence of 206.27(c)(1), no such

event has occurred in plaintiffs' cases as a result of their spouses' deaths. Foreclosure on the

mortgages at issue is not required on any time schedule (or at all). The mortgagees in plaintiffs'

20

cases are not required by HUD to pursue foreclosure to continue to get the benefits of their insurance contracts with HUD." HUD Brief at 24, *Plunkett v. Donovan*, 14-cv-00326-ESH (Doc. 37, July 21, 2014).

97.     As Section 206.27(c)(1) is invalid as applied to Ms. Guerriero, the death of Mr. Guerriero did not trigger the foreclosure provisions of Section 206.125.

98.     If not for the application of Section 206.27(c)(1), OneWest would not be required to foreclose under HUD's regulations. OneWest may continue holding the mortgage (and earning interest) for Ms. Guerriero's life (or until the loan balance reaches 98% of maximum claim value) without losing any part of its mortgage insurance benefits. OneWest may then assign the loan to HUD when the loan balance approaches 98% of the maximum claim amount pursuant to 24 C.F.R. § 206.107(a)(1).

99.     On information and belief, HUD has failed or refused to inform OneWest that the foreclosure provisions set forth in Section 206.125 do not apply or that OneWest is not required to foreclose on Ms. Guerriero's home in order to continue receiving the benefits of its insurance contract with HUD.

100.     On information and belief, as a direct result of HUD's failure or refusal to inform OneWest that the foreclosure provisions do not apply or that OneWest is not required to foreclose on Ms. Guerriero's home in order to continue receiving the benefits of its insurance contract with HUD, OneWest moved forward with foreclosure and is currently scheduled to sell Ms. Guerriero's home at Sheriff's Sale on May 5, 2015.

101.    HUD's decision to enforce the foreclosure provisions set forth in Section 206.125

is arbitrary, capricious, and not in accordance with law. This decision has materially affected

OneWest's decision to proceed with foreclosure.

102.    Ms. Guerriero is entitled to a declaratory judgment that the foreclosure provisions

of Section 206.125 have not been triggered, that OneWest is not required by the insurance

contract to foreclose, that OneWest may continue to hold the loan without losing any HECM

insurance benefits, and that the loan will be eligible for assignment to HUD when the balance

reaches 98% of the maximum claim amount.

## X. THIRD CLAIM FOR RELIEF

### DECLARATORY RELIEF – AGAINST HUD AND ONEWEST

**HUD's Failure to Assure Payment to OneWest that is not Contingent Upon
Foreclosure of Ms. Guerriero's Home Is Arbitrary & Capricious or Otherwise Not in
Accordance with Law and Exceeded HUD's Statutory Authority in Violation of § 706(2) of
the APA**

103.    All previous averments are incorporated herein by reference.

104.    24 C.F.R. § 206.123 provides the general procedures and circumstances under

which HUD may pay a claim for mortgage insurance benefits. In order for HUD to pay a claim

following sale or foreclosure of the property, the foreclosure must comply with the provisions of

Section 206.125 governing foreclosure procedures and timeframes. Section 206.123(a)(3)-(5).

105.    Section 206.125 is the only vehicle through which a mortgagee can initiate a

foreclosure that forms the basis for an insurance claim. Section 206.123.

106.    As set forth above, because Section 206.27(c)(1) is invalid and the loan is not due

and payable, Section 206.125 has not been triggered in Ms. Guerriero's case and the foreclosure

22

provisions of that Section do not apply. This is the "automatic" result of Section 206.27(c)(1) being held invalid.

107.    Because the foreclosure provisions of Section 206.125 have not been triggered, a foreclosure based solely on Mr. Guerriero's death would not support a claim for payment of mortgage insurance under Section 206.123.

108.    If the mortgagee declines to continue holding the loan until Ms. Guerriero's death (or until the balance reaches 98% of the maximum claim value), HUD still has a statutory obligation to ensure the mortgagee is repaid in the absence of an applicable foreclosure under Section 206.125. 12 U.S.C. 1715z-20(i).

109.    The most evident means to assure payment to the mortgagee in the absence of any applicable basis for foreclosure under the insurance contract is for HUD to accept assignment of the mortgage. Assignment to HUD is expressly authorized by statute to assure payment to the mortgagee in furtherance of the purposes of the program. 12 U.S.C. 1715z-20(i)(2). Assignment to HUD would further another primary purpose of the program: the protection of spouses from displacement.

110.    HUD is obligated to fulfill two essential requirements set forth in the HECM statute: (1) protect Ms. Guerriero, as the surviving spouse, from displacement; and (2) establish a means to assure payment to OneWest on the mortgage insurance.

111.    On information and belief, HUD takes the position that OneWest is required to foreclose on Ms. Guerriero in order to file a claim on the insurance benefits.

112.    HUD's position is arbitrary and capricious, and contrary to the statute and regulations.

23

113.    Upon information and belief, HUD has failed to accurately inform OneWest that foreclosure based solely on Mr. Guerriero's death would not form a basis to file a claim for payment on its mortgage insurance, and has failed to establish means to assure payment to OneWest, such as through assignment, if OneWest declines to continue holding the mortgage. Such failure was arbitrary, capricious, and not in accordance with law.

114.    This failure has materially affected OneWest's decision to proceed with foreclosure.

115.    Ms. Guerriero is entitled to a declaratory judgment that the foreclosure provisions of Section 206.125 have not been triggered, that foreclosure solely due to the death of Mr. Guerriero will not support a basis for HUD to pay a claim on the mortgage insurance, and that HUD is required to ensure payment to OneWest that is not contingent upon foreclosure of Ms. Guerriero's home.

## XI. FOURTH CLAIM FOR RELIEF
## REFORMATION – AGAINST ONEWEST AND HUD

116.    All previous averments are incorporated herein by reference.

117.    At the time of entering the three-party HECM agreement, Mr. Guerriero, OneWest, and HUD intended for the loan to be eligible for HECM insurance and to comply with the HECM insurance requirements.

118.    The terms of the HECM insurance, by explicitly incorporating statutory mandates for federally-insured reverse mortgages, required that the mortgage include protection against displacement for Ms. Guerriero.

24

119.    Due to mutual mistake of the parties, and misunderstanding as to what federal law required for the loan to be eligible for HECM insurance, the required provision to protect Ms. Guerriero from displacement was omitted from the HECM agreement.

120.    The protection against displacement of the spouse was nonetheless a key term of the HECM insurance contract, which was an integral part of the HECM loan agreement.

121.    Despite the absence of the spousal protection provision from the written HECM agreement, HUD's issuance of an insurance certificate was "conclusive evidence" that the loan was eligible for HECM insurance, including the spousal displacement requirement.

122.    The mortgage documents should be reformed to include protection against displacement for Ms. Guerriero, so as to reflect the intent of the parties that the loan comply with the HECM insurance requirements. Specifically, the due and payable provisions of the loan documents should be reformed to include the following language:

> Lender may not require immediate payment in full of all outstanding principal and accrued interest if the Property is the Principal Residence of a Non-Borrowing Spouse.

123.    If the loan agreement is not reformed, OneWest would be unfairly advantaged by reaping the benefits of the HECM insurance without having to comply with the requirements for such benefits. And Ms. Guerriero would suffer a significant loss in the form of displacement from her home, in violation of the core purpose of the HECM insurance program. If the loan agreement is reformed pursuant to this claim, OneWest will still be permitted to collect interest on the loan and receive payment under the HECM insurance upon the occurrence of another triggering event (such as the death of Ms. Guerriero or the loan balance reaching 98% of the maximum claim amount).

## XII. FIFTH CLAIM FOR RELIEF
## BREACH OF CONTRACT – AGAINST ONEWEST

124.    All previous averments are incorporated herein by reference.

125.    The terms of the HECM insurance are an integral part of the HECM loan agreement.

126.    The HECM insurance benefits include the requirement that the loan not be declared due and payable while Ms. Guerriero, the spouse of the borrower, continues to reside in it.

127.    Ms. Guerriero continues to reside in the home and fulfill her obligation to maintain the taxes and insurance.

128.    OneWest is required by the HECM contract to honor the terms of the HECM insurance.

129.    Ms. Guerriero requests specific performance of the HECM insurance contract, which would require OneWest to cease any further foreclosure activity and agree that Ms. Guerriero can continue to reside in her home until her death (as long as she complies with all other requirements of the HECM agreement).

## XIII. SIXTH CLAIM FOR RELIEF
## BREACH OF CONTRACT – AGAINST HUD

130.    All previous averments are incorporated herein by reference.

131.    HUD breached the HECM insurance contract by failing to ensure that the mortgage documents included the required provision about Ms. Guerriero's right to continue to reside in her home.

26

132.    HUD has continued to breach the HECM insurance contract by attempting to enforce the foreclosure deadlines that have not been triggered as a result of Mr. Guerriero's death.

133.    HUD has further breached the HECM insurance contract by failing to assure a means of insurance payment to OneWest that is not contingent upon OneWest foreclosing on Ms. Guerriero.

134.    Ms. Guerriero requests specific performance of the HECM insurance contract, which would require HUD to take immediate action to fulfill its dual responsibilities: (1) protect Ms. Guerriero from displacement from her home; and (2) ensure payment of insurance benefits to OneWest.

135.    The method for HUD to fulfill its dual obligations is outlined in the HECM insurance contract itself: HUD can take an assignment of the loan and then allow Ms. Guerriero to continue living in her home. Unless HUD proposes another method that would accomplish its dual obligations under the insurance contract, Ms. Guerriero requests specific performance of the contract by an order of assignment to HUD.


**WHEREFORE**, Plaintiff Ruth Guerriero respectfully requests that this Court:

a)    Enter a declaratory judgment that HUD failed to properly implement the anti-displacement protections in the HECM statute, has illegally adopted regulations that contravene this protection, and that Ms. Guerriero is entitled to the protections of 12 U.S.C. § 1715z-20(j);

b)    Enter a declaratory judgment that Ms. Guerriero, as a spouse of a reverse mortgage borrower, is a "homeowner" entitled to protection from displacement;

27

c) Enter a declaratory judgment that 24 C.F.R. § 206.27(c)(1) is arbitrary and capricious and/or contrary to law, and invalid as applied to Ms. Guerriero;

d) Enter a declaratory judgment that 24 C.F.R. § 206.125 has not been triggered by the death of Mr. Guerriero, and therefore OneWest is not required to foreclose;

e) Enter a declaratory judgment that because 24 C.F.R. § 206.125 has not been triggered by the death of Mr. Guerriero, HUD would not have a basis to pay an insurance claim based on foreclosure and must provide an alternative method to ensure payment to OneWest that is not contingent on foreclosure of Ms. Guerriero's home;

f) Enter an order reforming the mortgage documents to include the provision protecting Ms. Guerriero from displacement, as required by the HECM insurance contract with which the parties intended to comply;

g) Order OneWest to specifically perform its obligation under the HECM insurance not to call the loan due and payable until Ms. Guerriero's death or the occurrence of another due and payable event;

h) Order HUD to specifically perform its obligations under the HECM insurance contract to protect Ms. Guerriero from displacement and to ensure payment to OneWest, which would require HUD to accept assignment unless HUD develops an alternative method to fulfill both responsibilities;

i) Award plaintiff costs and attorney's fees under 28 U.S.C. § 2412 or as otherwise permitted;

j) Grant all other appropriate relief; and

k) Retain jurisdiction of this action to grant ongoing relief as may be required.

Dated: 3/27/15

*Michael R. Froehlich*

/s/ Michael R. Froehlich
MICHAEL R. FROEHLICH
Attorney for Plaintiff
Pa. Id. No. 92767
    Signature Validation Code Pending
COMMUNITY LEGAL SERVICES, INC.
1410 West Erie Avenue
Philadelphia, PA 19140
215-227-4733
mfroehlich@clsphila.org

/s/ Peter Schneider
PETER SCHNEIDER
Attorney for Plaintiff
Pa. Id. No. 40351
    Signature Validation Code PDS5131
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3718
pschneider@clsphila.org

29

## VERIFICATION

I, RUTH GUERRIERO, verify that the statements made in the accompanying COMPLAINT are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

3/25/15
DATE

RUTH GUERRIERO